IN THE UNITED STATES  DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 03-0070 |
| v. | : | |
| | : | |
| ACORN TECHNOLOGY FUND, L.P. | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Giles, C.J.                                                                 January 31, 2006

**I.      Introduction**

This controversy arises under the court's January 17, 2003 Order, which placed Acorn

Technology Fund, L.P. ("Acorn") in Receivership and appointed the United States Small

Business Administration ("SBA") as Receiver.  On December 21, 2004, the SBA requested and

was granted leave to lift the receivership stay to pursue claims against certain individuals for

alleged tortious conduct and for unjust enrichment as to Acorn.  On January 14, 2005, the SBA

commenced the present action charging thirteen causes of action, including:  1) Attorney

Malpractice, 2) Negligence, 3) Breach of Fiduciary Duties, 4) Aiding and Abetting Breach of

Fiduciary Duties, 5) Aiding and Abetting Gross Negligence, 6) Aiding and Abetting Wrongful

Conduct, 7) Aiding and Abetting Conversion, 8) Aiding and Abetting Waste, and 9) Unjust

Enrichment.

On August 8, 2005, Defendants Smith, Stratton, Wise, Heher & Brennan, LLP, Richard J.

Pinto, Esq., and Marsha E. Novick, Esq. (hereinafter "Smith Stratton"), answered the complaint

asserting a number of affirmative defenses as well as counterclaims against the SBA seeking

-1-

recoupment and the value of services rendered.  On September 30, 2005, the SBA filed a Motion

to Strike Certain Affirmative Defenses and to Dismiss all Counterclaims arguing, in part, that

Smith Stratton failed to seek leave to lift the receivership stay.  In response, on October 31, 2005,

Smith Stratton filed a Motion for a Determination that the Receivership Stay is Not Applicable to

Counterclaims or, in the Alternative, For Limited Lifting of the Receivership Stay and Injunction.

Because the question of whether the receivership stay should be lifted is directly applicable to

whether the counterclaims should be dismissed, the court has considered and decided both

motions.  For the reasons that follow, the motions are granted, in part, and denied, in part.

## II.     Factual Background

Formed in 1997, Acorn is a New Jersey Limited Partnership which was licenced to

operate as a Small Business Investment Company ("SBIC") in 1999.  Acorn's general partner

was Acorn Technology Partners LLC ("ATP") whose President and Manager was John

Torkelsen.  On January 17, 2003, Acorn was placed in receivership and the SBA was appointed

as Receiver "for the purpose of continuing the operations of Acorn including without limitation

managing Acorn's portfolio of investments, satisfying the claims of creditors and the sale of

assets in the ordinary course of business, and defending and pursuing claims and causes of action

available to Acorn, as warranted."

The essence of  the SBA's claims against all defendants is that each was a  knowledgeable

and active participant in a scheme to use Acorn and the SBIC Program to defraud the SBA out of

32 million dollars.  The SBA has alleged that John Torkelsen and some of his family members

and business associates engaged in self-dealing by funneling money through Acorn and the SBIC

Program into businesses owned or operated by Torkelsen and those affiliated with him.

The complaint alleges that beginning in September of 1997 Smith Stratton "provided legal services to Acorn with respect to its licensing as a small business investment company . . . as well as with respect to its management, operations and/or investment activities." (Pl.'s Compl. ¶ 36). Smith Stratton allegedly provided legal advice and professional services to the Torkelsen family, their businesses, and the businesses of those affiliated with them. (Pl.'s Compl. ¶¶ 38-44). The Receiver argues that Smith Stratton knew or should have know that the financing of many of these companies violated the applicable SBA laws and regulations for SBICs. (Pl.'s Compl. ¶¶ 45-47). The Receiver further alleges that through their legal representation Smith Stratton was consciously involved in, or had constructive notice of, multiple illegal actions taken by its client, including the submission of false documentation to the SBA for the purpose of obtaining federal funds. (Pl.'s Compl. ¶¶ 48-49).

Smith Stratton denies all allegations of the complaint and asserts that its "engagement was limited in scope and did not include the provision of advice and representation with respect to compliance with SBA law and regulations." (Defs.' Answer to Compl. ¶¶ 29, 36). Smith Stratton has also denied providing legal services to "Acorn and any other entity in connection with any financing in which such entity was to receive funds from Acorn." (Defs.' Answer to Compl. ¶¶ 40-43).

Smith Stratton raises sixteen affirmative defenses, four of which are the subject of the present Motion to Strike. They are as follows:

5.      To the extent, if any, that the Answering Defendants

are found to have any responsibility for any consequences of any violations of law or regulations by Acorn or other persons or entities, Answering Defendants' liability would be reduced or eliminated by the comparative or contributory negligence of the SBA and other persons or entities that represented, advised, monitored, audited or regulated Acorn. [Smith Stratton]'s engagement was limited in scope and did not include the provision of advice and representation with respect to compliance with SBA law and regulations.  Answering Defendants, at all relevant times, were repeatedly advised by Acorn, and those acting on its behalf, that issues of legal and regulatory compliance, and legal representation regarding those issues, were the responsibility of others, including Leif Torkelsen, Esq.[,] Michael Wyatt, Esq.[,] and Mr. Wyatt's law firm."

6.      To the extent, if any, that the Answering Defendants are found to have any responsibility for the consequences of any alleged violations of law or regulations by Acorn or other persons or entities, Answering Defendants' liability would be reduced or eliminated by their reasonable reliance on the conduct and statements of the SBA and those acting on its behalf that demonstrated knowledge of and addressed, and either waived or acknowledged correction by Acorn of, several alleged violations of law or regulations by Acorn, including, but not limited to, issues regarding payments by Acorn of management fees, overline investments and affiliations with portfolio companies and subsequent approval by the SBA of Acorn draw requests, which further tended to indicate that such alleged violations were rectified, ratified, or waived.

10.     The claims asserted in the Complaint against the Answering Defendants are barred in whole or in part by operation of the doctrine of imputation and the resultant imputation to the SBA, as Receiver, of responsibility for the alleged conduct of Acorn.

12.     The claims asserted in the Complaint against the

-4-

> Answering Defendants are barred in whole or in part by operation of the doctrines of setoff and recoupment.

In addition, Smith Stratton has counterclaimed against the SBA for recoupment and for services rendered.  Smith Stratton charges that the SBA was "aware of the conduct of Acorn that it now alleges are violations of the Regulations and the Act well in advance of the filing of the Receivership Complaint and failed to act on that information."  (Defs.' Countercl. ¶ 10).  Smith Stratton asserts that Acorn, and those acting on its behalf, made material misrepresentations to it and that it reasonably and justifiably relied upon those representations regarding Acorn's compliance with the applicable rules and regulations of SBICs.  (Defs.' Countercl. ¶¶ 14, 15, 17, 18).  Therefore, Smith Stratton argues that any liability on its part should be reduced or eliminated by the doctrine of recoupment.  (Defs.' Countercl. ¶ 19).  Finally, Smith Stratton seeks payment for legal services rendered to Acorn from June 2001 until December 2002. (Defs.' Countercl. ¶¶ 21-24).

On September 20, 2005, the SBA filed a Motion to Strike Certain Affirmative Defenses and to Dismiss All Counterclaims of Defendants Smith Stratton.  The SBA submits that affirmative defenses numbers 5, 6, 10, and 12, sounding in recoupment, should be stricken because they make claims against the SBA in its regulatory role.  (Pl.'s Mot. to Strike at 11).

First, the SBA contends that it owes no duty to Smith Stratton which could offset Smith Stratton's liability under theories of comparative negligence, contributory negligence and reasonable reliance.  (Pl.'s Mot. to Strike at 11-12).  The SBA offers that affirmative defense 10 should be stricken because equity prevents the imputation of a company's illegal conduct to a

court-appointed Receiver.  (Pl.'s Mot. to Strike at 12-13).  Finally, the SBA argues that affirmative defense 12, as it relates to recoupment, should be stricken because it fails as a matter of law.  (Pl.'s Mot. to Strike at 14).  More specifically, the SBA argues that Smith Stratton's claims for recoupment, both in affirmative defense 12 and in its counterclaim, fail to state a claim and that the alleged illegal conduct of Smith Stratton does not involve a 'single transaction.'[1] (Pl.'s Mot. to Strike at 6-10).

The SBA further argues that the recoupment counterclaim should be dismissed in its entirety because Smith Stratton failed to seek leave to lift the receivership stay.  (Pl.'s Mot. to Strike at 10-11).  Smith Stratton did file a motion in the above-captioned matter and in United States v. Acorn Technology Fund, Civil Action No. 03-70, where the receivership stay was originally entered.  A ruling is sought that the stay is not applicable to the recoupment claim or, in the alternative, that it should be lifted.  Smith Stratton claims that the receivership stay anticipates that the Receiver will be called upon to defend claims and causes of actions asserted against Acorn.  (Defs.' Mot. to Lift the Stay at 2).  In the alternative, it asserts that the stay should be lifted because the recoupment claim is a compulsory counterclaim.  (Defs.' Mot. to Lift the Stay at 3-6).  Finally, the SBA responds that the receivership stay cannot be lifted because the alleged recoupment counterclaim does not meet the standards set forth in United States v. Acorn

---

[1]  The SBA's September 20, 2005 motion sought to strike the affirmative defenses of Smith Stratton pursuant to Fed. R. Civ. P. 12(f) and to dismiss the recoupment and services rendered counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).  In its November 30, 2005 response to Smith Stratton's request for the court to lift the receivership stay in order to pursue its counterclaims (filed in the related case United States v. Acorn, Civil Action No. 03-70) it informed the court that it did not oppose a limiting lifting of the stay to permit Smith Stratton to pursue its claim for attorney's fees.  Therefore, the court will not consider the SBA's earlier motion to dismiss the second counterclaim for services rendered.

Technology Fund, 429 F.3d 438 (3d Cir. 2005).

### III.  Motion to Strike

   A.   Judicial Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  While motions to strike are generally disfavored, they "do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case."  United States v. Union Gas Co., 743 F. Supp. 1144, 1150 (E.D. Pa. 1990).  See also McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (finding that "the purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."); Cameron v. Graphic Mgmt. Assoc., Inc., 817 F. Supp. 19, 22 (E.D. Pa. 1992) (holding that "the court may grant a motion to strike a legally insufficient defense so the parties to the suit do not needlessly waste time and money in preparation of trial.")

A motion to strike under Rule 12(f) is the "primary procedure" for objecting to an insufficient affirmative defense.  Union Gas, 743 F. Supp. at 1150; United States v. Marisol, Inc., 725 F.Supp. 833, 836 (M.D. Pa. 1989).  The court, however, "should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'"  Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986).  An affirmative defense is insufficient "if as a matter of law it cannot succeed under any circumstances," In re Sunrise Sec. Litig., 818 F. Supp. 830, 840 (E.D. Pa. 1993), and "the moving party is prejudiced by the presence of the allegations

in the pleading." <u>Great West Life Assurance Co. v. Levithan</u>, 834 F. Supp. 858, 864 (E.D. Pa. 1993). <u>See also</u> <u>Miller v. Group Voyagers, Inc.</u>, 912 F. Supp. 164, 168 (E.D. Pa. 1996) (holding that motions to strike "will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party."); <u>North Penn Tranfer, Inc. v. Victaulic Co. of America</u>, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (same). Finally, a motion to strike "should not  be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law." <u>Marisol</u>, 725 F. Supp. at 836.

       B.    <u>The SBA as Regulator</u>

The Receiver argues that affirmative defenses number 5 and 6 should be stricken because they attack the SBA in its role as regulator and therefore fail as a matter of law.  The court agrees.  It is well-settled that the  Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679, is the exclusive avenue for monetary claims initiated against an administrative agency which sound in tort.  <u>United States v. Acorn Technology Fund</u>, 429 F.3d 438, 445 (3d Cir. 2005).  Pursuant to the discretionary function exception, 28 U.S.C. § 2680(a), an administrative agency is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Affirmative defenses 5 and 6 directly challenge the SBA's discretionary conduct in regulating Acorn as a SBIC.  Affirmative defense 5 seeks to limit Smith Stratton's liability based on the conduct of the SBA, or its agents, in "represent[ing], advis[ing], monitor[ing], audit[ing],

or regulat[ing] Acorn."  Affirmative defense 6 seeks to limit Smith Stratton's liability based on its "reliance on the conduct and statements of the SBA and those acting on its behalf."  Both of these defenses relate to "[e]lements of judgment or choice," United States v. Gaubert, 499 U.S. 315, 322 (1991), by the SBA and under the discretionary function exception these alleged actions and inactions cannot be used as a basis for holding the SBA liable or for offsetting Smith Stratton's alleged liability.

      C.      Imputation is Not Applicable to the Receiver

Next, the SBA argues that affirmative defense 10 should be stricken because the doctrine of imputation does not apply to a court-appointed receiver.  It is well-settled that state law, and not federal law, governs the application of the imputation doctrine.  See O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 84 (1994).  New Jersey law precludes Smith Stratton from asserting the defense of imputation.  In In re Integrity Ins., 573 A.2d 928 (N.J. Super. Ct. App. Div. 1990) the court held that when a Receiver alleges active misconduct on the part of third-parties, which causes harm to the original company, those third-parties are precluded from arguing that the Receiver's action is barred due to imputed actions of the company's officers and directors.  Id. at 941-42.  The court explained that while it normally imputes the knowledge of corporate officers and directors to a company, "'the doctrine of constructive notice to the principal is not available' to one who contributed to the misconduct sought to be imputed."  Id. at 941 (quoting Nischne v. Firestone Tire & Rubber Co., 173 A. 341, 342 (N.J. Ch. 1934)).  The court reasoned that "even though an agent (the directors and officers) of a principal ([Acorn]) may be responsible for falsity, the third party's ([Smith Stratton's]) culpability, if established, would estop it from raising the defense of imputation."  Id. at 941-42.  This is because "'[t]he rule of implied notice

is invocable to protect the innocent, never to promote injustice.'" <u>Id.</u> at 942 (quoting <u>Nischne</u>, 173 A. at 342).  Here, the complaint alleges that as Acorn's attorneys Smith Stratton directly contributed to the misconduct which it is now seeking to impute to the SBA as Receiver.  The complaint alleges that Smith Stratton either knew, or should have known, of various illegal activities of Acorn and its officers and directors and that Smith Stratton directly or indirectly caused Acorn to submit false documentation to the SBA for the purposes of obtaining matching federal dollars.  If the allegations of the complaint are proved, Smith Stratton could not impute to the SBA as Receiver, the wrongdoing in which it was a participant.  Thus, the defense of imputation is stricken.

        D.      <u>The Theory of Recoupment is Not Applicable</u>

Finally, the SBA argues that the recoupment portion of affirmative defense 12 should be stricken because the alleged Smith, Stratton conduct involves multiple, rather than a single transaction, as would be required to assert a claim for recoupment.  For the reasons more fully discussed below relating to Smith Stratton's counterclaim for recoupment, affirmative defense 12 for recoupment is likewise stricken.

**III.**    **Motion to Lift the Receivership Stay**

On October 31, 2005, Smith Stratton filed here and in the related case of <u>United States v. Acorn Technology Fund</u>, No. 03-70, a Motion for a Determination that the Receivership Stay is Not Applicable to the Counterclaims Asserted in the above-captioned matter, or, in the alternative, for Limited Lifting of the Receivership Stay and Injunction.  The court considers first

whether the receivership stay is applicable to the asserted counterclaims and then whether the receivership stay should be lifted.  The SBA objects to the receivership stay being lifted to allow Smith Stratton to pursue its recoupment counterclaim and does not object to Smith Stratton's counterclaim for services rendered, or attorneys fees.

A.    The Receivership Order is Applicable

Smith Stratton argues that the receivership stay is not applicable to its counterclaims for recoupment and services rendered (i.e. attorneys fees).  In support, Smith Stratton cites to the specific language of the court's Order of January 13, 2003 which placed Acorn into receivership ("the Order").  Specifically, Smith Stratton cites ¶ 1 of the Order which provides that the "Receiver is appointed for the purpose of continuing the operations of Acorn including, without limitation, managing Acorn's portfolio of investments, satisfying the claims of creditors and the sale of assets in the ordinary course of business, and defending and pursuing claims and causes of action available to Acorn, as warranted."  Smith Stratton argues that, on its face, the Order contemplates that the SBA, as Receiver, must defend all claims against Acorn including the counterclaims as styled.  This is incorrect.  Paragraph 7 of the Order explains that any civil action related to Acorn or the conduct of its officers and directors is stayed until specific order of this court.[2]  Paragraph 7 provides that "all civil legal proceedings of any nature" involving an "action

_____

[2]  Paragraph 7 reads:  "The parties to any and all civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving Acorn or any assets of Acorn, including subsidiaries and partnerships, wherever located, and excluding the instant proceeding, involving Acorn, the Receiver or any of Acorn's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with such proceeding or any such

of any nature involving Acorn" and its assets "are stayed in their entirety."  Smith Stratton's counterclaims fall unambiguously within this broad protection and are automatically stayed unless the court determines otherwise.

Smith Stratton argues, alternatively, that the Order is not applicable to its counterclaim for recoupment because it is compulsory.  The court rules that whether Smith Stratton's counterclaim for recoupment is characterized as compulsory or permissive, it still falls within the express prohibition of the Order.

B.    Judicial Standard for Lifting a Receivership Stay

The third circuit has recently adopted the standard set forth in S.E.C. v. Wencke, 633 F.2d 1363 (9th Cir. 1980) ("Wencke I") and S.E.C. v. Wencke, 742 F.2d 1230 (9th Cir. 1984) ("Wencke II") (collectively "Wencke") for a district court to follow in determining whether to lift a receivership stay.  Acorn, 429 F.3d at 444.  In deciding whether to lift a receivership stay, in whole or in part, the district court must use a three-part test:

> (1) Whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.  Acorn, 429 F.3d at 443 (quoting Wencke II, 742 F.2d at 1231).

_____

asset.  All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving Acorn or any assets of Acorn, including subsidiaries and partnerships, wherever located, and excluding the instant proceeding, involving Acorn, the Receiver or any of Acorn's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court."

In applying this standard, the court must balance the interests of both parties, while remaining mindful that "the interests of the Receiver are very broad and include not only protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy."  Acorn, 429 F.2d at 443 (quoting Wencke II, 742 F.2d at 1231).  The third circuit recognizes that "[a] receiver must be given a chance to do the important job of marshaling and untangling a company's asserts without being forced into court by every investor or claimant," yet this latitude must be balanced by "an appropriate escape valve, which allows potential litigants to petition the court for permission to sue . . . so that litigants are not denied a day in court during a lengthy stay."  Id.

While, as a general matter, "it would be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings," if the court determines that the claim has no merit on its face the court may end the matter there.  Id. at 444.  If the court determines that there may be a colorable claim which could benefit from factual development, the court should then consider the other Wencke factors.  Id.  Because Smith Stratton's counterclaim for recoupment lacks merit as is explained below, the court will not lift the stay.

C.    Recoupment is a Contract, Not a Tort, Recovery Device

Recoupment is an equitable doctrine of state contract law only.  See Lee v. Schweiker, 739 F.2d 870, 876 (3d Cir. 1984) (holding that appellate was not entitled to recoupment of overpayments because entitlement to government benefits was not contractual); In re Univ. Med. Ctr., 122 B.R. 919, 926 (Bankr. E.D. Pa. 1990) (describing Lee as "finding that recoupment [is] a defense only to actions under contracts").  Recoupment is available only to parties who have

engaged in a single, contractual transaction, to offset their contractual financial obligations by, for example, previous overpayments.  See, e.g., In re Monsour Med. Ctr., 11 B.R. 1014 (W.D. Pa. 1981).

Here, it seems Smith Stratton is attempting to use the label of recoupment as a disguise for a tort based attack against the SBA.  Smith Stratton has not alleged that it has paid money to the SBA which it is now seeking to recover.  Rather, it is claiming that the SBA was negligent in not adequately policing Acorn or knowingly permitted certain illegal conduct to go unchecked. These are tort concepts that cannot fit into the restricted mold of contractual recoupment. Therefore, New Jersey's doctrine of contract based recoupment, either as a counterclaim or as an affirmative defense, is not applicable.  Therefore, the stay will not be lifted for pursuit of a claim that is not legally cognizable.

D.      The Stay is Lifted to Allow a Counterclaim for Attorneys Fees

Finally, Smith Stratton requests that the stay be lifted to allow pursuit of its counterclaim for attorneys fees.  The Receiver does not object to lifting the stay for this claim.  Permitting Smith Stratton to attempt to recover legal fees for services rendered would not interfere with the proper administration of the Receivership.  If the claim were precluded by continuation of the stay, Smith Stratton could unfairly suffer economic harm in not being able to recover that which is owed under contract.  Therefore, the stay is lifted to allow Smith Stratton to pursue its counterclaim for services rendered.

IV.      Conclusion

-14-

For the foregoing reasons, the Receiver's Motions to Strike Certain Affirmative Defenses and to Dismiss all Counterclaims of Smith Stratton and Smith Stratton's Motion to Lift the Receivership Stay are granted in part and denied in part.

An appropriate Order follows.